# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————

## No. 25-1250

———————————

ECHOL WATKINS,
*Plaintiff-Appellant*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Defendant-Appellee.*

———————————

United States District Court
for the District of New Jersey

Civ. No. 2:23-cv-20860-SDW-SDA

———————————

## PLAINTIFF-APPELLANT'S OPENING BRIEF & JOINT APPENDIX – VOLUME 1 (JA 1-13)

———————————

James Ristvedt, AZ Bar #035938
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1956
F: (718) 715-1750
E: jristvedt@consumerjustice.com

*Attorneys for Plaintiff-Appellant Echol Watkins*

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................... 1

STATEMENT OF JURISDICTION ........................................................................ 2

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ......................... 3

STATEMENT OF RELATED CASES AND PROCEEDINGS ......................... 4

INTRODUCTION ............................................................................................................ 5

STATEMENT OF THE CASE ....................................................................................... 8

    I.  Factual Background ............................................................................................ 8

    II. Procedural Background ................................................................................... 10

          A. Plaintiff's Claims Against Experian ................................................ 10

          B. Experian's Motion for Summary Judgment.................................... 11

          C. The District Court's Decision Granting Summary Judgment ..................... 13

SUMMARY OF ARGUMENT ..................................................................................... 16

ARGUMENT...................................................................................................................... 18

    I.  Under the FCRA, a CRA's statutory duty to report information from state and local child support enforcement agencies does not supersede its statutory duty to follow procedures that assure maximum possible accuracy. Experian reported demonstrably inaccurate information from the DCSE while refusing to also report other accurate information...................................................................... 18

          A. Standard of Review ............................................................................... 18

          B. The Elements of Plaintiff's Causes of Action under § 1681e(b) and § 1681i(a) ...................................................................................................... 19

          C. The FCRA Requires Maximum Possible Accuracy in Consumer Reporting ........................................................................................... 21

          D. The FCRA's Child Support Reporting Requirements ................................. 24

          E. The Relationship between a CRA's Duties under § 1681s-1 and its duties under §§ 1681e(b) and 1681i(a) ...................................................... 25

          F. There were factual questions about whether Experian complied with its duties under § 1681e(b) and § 1681i(a) when it parroted the DCSE's reporting and

did not include additional information to demonstrate the inaccuracies in that reporting. ........................................................................................... 30

G. There were factual questions about whether Experian willfully violated the FCRA. ................................................................................................... 37

H. The district court erred because it granted summary judgment when the undisputed facts and evidence raised material questions of fact. .................. 38

**CONCLUSION AND RELIEF REQUESTED** ...................................................... 41

**COMBINED CERTIFICATIONS** ........................................................................... 43

# TABLE OF AUTHORITIES

## Cases

*Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 8:21-cv-563-WFJ-JSS, 2021 U.S. Dist. LEXIS 149742 (M.D. Fla. Aug. 10, 2021) .................................................................. 31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................... 19

*Bath v. Boundy*, Civil Action No. 18-cv-00384-RBJ-STV, 2018 U.S. Dist. LEXIS 218934 (D. Colo. June 19, 2018) .................................................................................. 30

*Berry v. Experian Info. Sols., Inc.* 115 F.4th 528 (2024) .................................... passim

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ...................... 33

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................ 19

*Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800 (7th Cir. 2023) ............................... 22

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) ..................................... passim

*Curtis v. Trans Union, LLC*, 2002 U.S. Dist. LEXIS 23471 (N.D. Ill. Dec. 9, 2002) ..... 24

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) .................................. 21, 28

*Erickson v. FADV Background Servs.*, 981 F.3d 1246 (11th Cir. 2020) ................ 21, 22, 31

*Garcia v. Equifax Info. Servs., LLC*, No. 8:22-cv-1987-WFJ-UAM, 2024 U.S. Dist. LEXIS 71560 (M.D. Fla. Apr. 19, 2024) ...................................................... 24

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995)) .......................... 20

*Gunn v. JPMorgan Chase Bank, N.A.*, No. 8:24-53-AAQ, 2025 U.S. Dist. LEXIS 55707 (D. Md. Mar. 26, 2025) ...................................................................... 24

*Johnson v. Trans Union, LLC*, 524 F. App'x 268 (7th Cir. 2013) .............................. 28, 29

*Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010) ........................................ 18

*Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) .................................. 23

*McIntyre v. RentGrow, Inc.*, 34 F.4th 87 (1st Cir. 2022) ............................................ 23

*Monroe v. Grow Fin. Fed. Credit Union*, No. 8:22-cv-1333-WFJ-JSS, 2022 U.S. Dist. LEXIS 218703 (M.D. Fla. Dec. 5, 2022) ............................................................. 32

*Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 U.S. Dist. LEXIS 59163 (N.D. Tex. Apr. 25, 2013) ........................................................................... 29

*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) ................................ 20, 28, 33

*Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) ................................................... 23

*PJM Power Providers Grp. v. FERC*, 96 F.4th 390 (3d Cir. 2024) ................................ 36

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) ............................... 16, 20, 37

*Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004) .............................. 33

*Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008) ........... 22, 23

*Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896 (3d Cir. 2011) ........................... 14

*Seamans v. Temple Univ.*, 744 F.3d 853 (3d Cir. 2014) ..................................... passim

*Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938 (6th Cir. 2020) ......................... 22

*Underwood v. Experian Info. Sols., Inc.*, No. 16 C 7829, 2017 U.S. Dist. LEXIS 52244 (N.D. Ill. Apr. 5, 2017) ............................................................................. 29

*Williams v. Experian Info. Sols., Inc.*, No. C22-5840 MJP, 2024 U.S. Dist. LEXIS 26852 (W.D. Wash. Feb. 15, 2024) ...................................................................... 24

**Statutes**

102 P.L. 537, 106 Stat. 3531 ........................................................................... 25

15 U.S.C. § 1681 ................................................................................. 1, 2, 5, 19

15 U.S.C. § 1681(b) ......................................................................................... 19

15 U.S.C. § 1681e(b) ................................................................................. passim

15 U.S.C. § 1681i(a) .................................................................................. passim

15 U.S.C. § 1681n .......................................................................................... 37

15 U.S.C. § 1681p ............................................................................................ 2

15 U.S.C. § 1681s-1 .................................................................................. passim

28 U.S.C. § 1291 ............................................................................................. 2

28 U.S.C. § 1331 ............................................................................................. 2

**Rules**

28 U.S.C. § 1291 ............................................................................................. 2

Fed. R. App. P. 4(a)(1)(A) ................................................................................. 2

Fed. R. Civ. P. 56 ........................................................................................... 18

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Echol Watkins ("Plaintiff") respectfully requests oral argument. This appeal raises an issue under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") that has not been previously decided by this Court. Specifically, it raises the question whether a consumer reporting agency's duty to report information from a state child support enforcement agency modifies or supersedes its overarching duty under the FCRA to follow reasonable procedures to assure that its reporting will be accurate and that consumer disputes will be investigated and redressed. Plaintiff suggests that oral argument may assist this Court in resolving this issue.

# STATEMENT OF JURISDICTION

This case arises from Plaintiff-Appellant Echol Watkins' ("Plaintiff") allegation that he was injured because Defendant-Appellee Experian Information Solutions, Inc. ("Experian") violated its duties under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Specifically, in his Complaint [Doc. No. 1], JA 21-40, Plaintiff alleges that Experian violated 15 U.S.C. § 1681e(b) when it published inaccurate consumer reports about him and 15 U.S.C. § 1681i(a) when it failed to make corrections after he disputed the accuracy of its reporting. Accordingly, the district court had jurisdiction of this case under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

Experian filed a Motion for Summary Judgment [Doc. No. 20], JA 41-44, which Plaintiff opposed [Doc. No. 26], JA 404-432. On January 13, 2025, the district court issued an Opinion [Doc. No. 49], JA 3-13, and accompanying Order [Doc. No. 50], JA 2, which granted Experian's motion and entered judgment in favor of Experian on all of Plaintiff's claims.

Plaintiff filed his Notice of Appeal [Doc. No. 52], JA 1, on February 11, 2025, making it timely under Fed. R. App. P. 4(a)(1)(A).

Because Plaintiff's appeal is from final order or judgment by the district court that disposed of all of the parties' claims, and because Plaintiff timely filed his Notice of Appeal, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

I.  Under the FCRA, a CRA's statutory duty to report information from state and local child support enforcement agencies does not supersede its statutory duty to follow procedures that assure maximum possible accuracy. Experian reported demonstrably inaccurate information from the DCSE while refusing to also report other accurate information. Did the district court err by ruling that, as a matter of law, Experian completely fulfilled its duty under the FCRA when it reported only the inaccurate information from DCSE?

This issue was raised in Experian's Motion for Summary Judgment [Doc. No. 20], JA 41-44, and supporting memorandum [Doc. No. 20-2], JA 56-84, and in Plaintiff's opposing memorandum [Doc. No. 26], JA 404-432. The district court ruled on this issue in its Opinion [Doc. No. 49], JA 3-13, and Order [Doc. No. 50], JA 2.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. Plaintiff is not aware of any other case or proceeding that is related to this case that has been completed or is pending or is about to be presented in this Court or any other court or agency, state or federal.

## INTRODUCTION

The Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") establishes a fundamental requirement that consumer reporting agencies ("CRAs") follow reasonable procedures to assure maximum possible accuracy in their reporting of consumer information. *See* 15 U.S.C. § 1681e(b); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014). In addition to this overarching standard of accuracy, the FCRA requires that CRAs report the information provided by state child support enforcement agencies about consumers' payment of their child support obligations. *See* 15 U.S.C. § 1681s-1. This case turns on a question about how those two requirements are balanced.

Pursuant to an order from a New York family court, Plaintiff had an obligation to make child support payments between 2003 and 2017. Those payments were directed to New York's child support enforcement agency, which passed them along to their beneficiary, and which maintained records of those payments. Once his obligation ended, the agency reported to Experian and other CRAs that his payment account was paid and closed. Years later, for unknown reasons, the agency started to report that the account was open and that there were delinquent payments on the account in 2021 and 2022. Experian parroted this information uncritically, even though its own historical account information showed that the agency's reporting may be patently incorrect. Experian never supplemented the agency's inaccurate reporting with additional information about the account history, even after Plaintiff repeatedly disputed the accuracy of the reporting from the agency and Experian.

Plaintiff sued Experian, asserting two causes of action under the FCRA: (1) for failing to follow its statutory duty to follow reasonable procedures to assure maximum possible accuracy in its reporting, as required by 15 U.S.C. § 1681e(b); and (2) for failing to conduct a reasonable reinvestigation of its reporting when Plaintiff disputed its accuracy, as required by 15 U.S.C. § 1681i(a). Experian moved for summary judgment, contending that its only duty under the FCRA was to report the information provided by a state child support enforcement agency, regardless of whether that information was accurate. It rejected any suggestion that it might have to supplement such an agency's information with other accurate information that would prevent users of its consumer reports from misunderstanding whether and how a consumer had met his child support obligations.

Following recent precedent from the Sixth Circuit in *Berry v. Experian Info. Sols., Inc.* 115 F.4th 528 (2024), the district court correctly recognized that the FCRA's requirements for reporting information from child support enforcement agencies do not supersede its parallel requirements for assuring that CRAs report accurate information. But, even though it professed adherence to the principle in *Berry*, the district court failed to actually apply this principle when deciding Experian's summary judgment motion. It ruled that Experian completely complied with its duties under the FCRA by merely parroting information from the child support enforcement agency.

Because the district court's ruling is contrary to the fundamental principles of the FCRA and to persuasive, directly on point authority from the Sixth Circuit, Plaintiff

6

asks this Court to reverse the district court's grant of summary judgment to Experian and to remand this case to the district court for further proceedings.

## STATEMENT OF THE CASE

### I. Factual Background

Like many other states, New York has a set of default rules for the making of court-ordered child support payments. According to those rules, the payor submits each payment to the New York City Commissioner of Social Services through the New York City Support Collection Unit, which then passes the payments along to the appropriate recipient. *See* Experian's Statement of Material Facts Not in Dispute ("SMF") [Doc. No. 20-1] at ¶ 2, JA 44. The New York City Office of Child Support Enforcement maintains an account for each court-ordered child payment plan, and it records account information in a computerized system. *See id.* at ¶ 3, JA 45. The New York State Division of Child Support Enforcement ("DCSE") uses this system to provide information to CRAs about the timeliness of all account payments. *Id.* at ¶ 11, JA 46.

In 2003, the New York City Family Court ordered Plaintiff to make child support payments of $156 per week. SMF at ¶ 2, JA 44. As reflected in the official account records, Plaintiff began to make those payments on June 6, 2003, and his duty to make those payments continued for fourteen years. *See id.* at ¶ 6, JA 45. Over time, the amount of Plaintiff's payment obligations changed, and, by June 2009, his required payment was $50.00 per month. *Id.* at ¶ 4, JA 45.

Plaintiff made his final court-ordered payment on May 30, 2017. *Id.* During this fourteen-year period of his payment obligation, Plaintiff was only late on seven payments, none of which came after March 2013. SMF at ¶ 5, JA 45. In October 2021,

New York City Department of Social Services issued a letter stating that Plaintiff's child support payment account ("the Account") was "closed" and confirmed that "there are no past due payments outstanding." *Id.* at ¶ 7, JA 45.

Experian continued to report the Account even after Plaintiff's payment obligation ended and the Account was closed. For the period between 2017 and 2020, Experian reported the Account as "in Good Standing." SMF at ¶ 21, JA 48; *see also* Plaintiff's Supplement Statement of Material Facts [Doc. No. 26-2] ("SSMF") at ¶ 1, JA 451. Beginning in 2021, Experian's reporting changed. It continued to report the Account as "paid" and "closed," but it began to include other information which indicated that the Account was still open and that Plaintiff had continuing obligations to make payments. For example, Experian's reporting reflected coded information to denote that, for certain months, the Account was in "collection" status. SMF at ¶ 21, JA 48. In particular, Experian reported that the Account was in collection status in November 2021, March and April of 2022, and March 2023. *Id.* For numerous other months, Experian reported that there was "no data" available for the payment status of the Account. *See id.* Experian asserts that such reporting was derived entirely from information provided to it by DCSE. *See id.*

Experian changed its reporting in September 2023. It began to report the Account as "open", and it reported that the Account had been in a collection status for November 2022. SMF at ¶ 22, JA 48-49. It also reported that, for numerous months in 2022, there was no data for the Account. *Id.* For several other months in 2022 and 2023,

Experian reported that the account was "OK." *Id.* Experian asserts that this change in its report precisely repeated information provided by DCSE. *See id.*

When Plaintiff learned about this inexplicable change in the reporting of the long-ago paid-and-closed Account, he sent letters to Experian, disputing the accuracy of that reporting. Over time, Plaintiff submitted a total of **eighteen** dispute letters to Experian. SMF at ¶¶ 25, 32, JA 49, 51. On eleven occasions, Experian responded to those dispute letters by sending an Automated Credit Dispute Verification form ("ACDV") to DCSE, asking DCSE to verify the information that Experian was reporting about the Account. *Id.* at ¶ 26, JA 50. On each of these eleven occasions, the DCSE "confirmed" the information that Experian had been reporting. *Id.* Experian admits that it never conducted **any** investigation in response to the other seven dispute letters because, pursuant to its internal mail-handling policies, it concluded that those letters were not sent "directly" by Plaintiff himself. *Id.* at ¶¶ 24, 32, JA 49-50, 51.

Experian's persistent inaccurate reporting had significant adverse consequences for Plaintiff. He applied for a credit card but was denied due to delinquent accounts on his credit report. SMF ¶ 48, JA 53. He also lost opportunities to obtain credit for the purchase of a truck that he needed for his business. *Id.* at ¶¶ 45-50, JA 53-54.

## II.     Procedural Background

### A.     Plaintiff's Claims Against Experian

Plaintiff, a New Jersey resident, sued Experian in the district court, alleging that it violated the FCRA in its reporting of the Account. *See*, *generally*, Complaint [Doc. No.

1], JA 21-40. Specifically, Plaintiff alleged that, after November 2021, Experian's reporting about the Account was inaccurate because it indicated that the Account was open and occasionally past due when, in fact, it had been closed in 2017. *Id.* at ¶¶ 48-58, JA 29-30. Plaintiff alleged that this inaccurate reporting breached Experian's statutory duty under 15 U.S.C. § 1681e(b) to follow reasonable procedures to assure maximum possible accuracy in its reporting. *Id.* at ¶¶ 99-106, JA 36-37. Plaintiff also alleged that Experian had breached its statutory duty under 15 U.S.C. § 1681i(a) to conduct reasonable investigations of its reporting each time a consumer disputes its accuracy. *Id.* at ¶¶ 107-15, JA 38-39. Plaintiff alleged that Experian breached this duty in two ways: 1) by not correcting its reporting to make it accurate, thereby failing to reasonably reinvestigate eleven of Plaintiff's eighteen disputes; and 2) by failing to conduct **any** investigation whatsoever in response to seven of his eighteen disputes. Plaintiff alleged that Experian's violations of both statutory duties were willful and/or negligent. *Id.* at ¶¶ 105, 114, JA 37, 39.

### B. Experian's Motion for Summary Judgment

Experian moved for summary judgment. *See* Experian's Motion for Summary Judgment [Doc. No. 20], JA 41-43; Memorandum of Law in Support of Experian's Motion for Summary Judgment ("Memorandum") [Doc. No. 20-2], JA 56-84. Experian's primary argument for summary judgment depended upon 15 U.S.C. § 1681s-1, which requires that CRAs report information provided by state or local child support enforcement agencies. Memorandum at pp. 9-14, JA 70-75. According to Experian, its

reporting could not have been inaccurate and did not require correction because it was required to report any information that came from the DCSE and because it accurately relayed the information that the DCSE provided. *See id.* Experian also argued that it did not violate the requirements of § 1681i(a) by failing to respond to seven of Plaintiff's dispute letters. Experian insisted that its duty under that statute only applies to disputes submitted by consumers themselves and that it had good reason to conclude that those seven disputes had been submitted not by Plaintiff but by some third party. *Id.* at pp. 14-16, JA 75-77. Experian also argued that Plaintiff could not prove that its violations were willful or that he suffered any cognizable damages. *Id.* at pp. 16-21, JA 77-82.

Plaintiff opposed summary judgment by arguing that, as a matter of law, Experian's statutory duty to report information from state and local child support agencies did not supersede either its overarching duty of accurate reporting or its duty to conduct investigations and correct any inaccurate information. Plaintiff's Opposition to Experian's Motion for Summary Judgment [Doc. No. 26] at pp. 4-20, JA 411-427. Plaintiff also argued that the undisputed facts about Experian's investigations were sufficient to create questions of material fact about whether Experian's violations were willful and/or negligent. *Id.* at pp. 20-22, JA 427-429. Finally, Plaintiff refuted Experian's argument that he had not suffered any cognizable injuries or damages. *Id.* at pp. 22-24, JA 429-431.

On the same day that Experian filed its reply brief in support of summary judgment, the Sixth Circuit published its opinion in *Berry v. Experian Info. Sols., Inc.* 115

F.4th 528 (2024), which addressed the nature of a CRA's duties to report information from a state or local child support enforcement agency when the agency's information is shown to be inaccurate. Experian filed a Notice of Supplemental Authority [Doc. No. 35], JA 95-98, with respect to the Sixth Circuit's decision.

### C. The District Court's Decision Granting Summary Judgment

The district court granted Experian's Motion for Summary Judgment, explaining its decision in an opinion issued on January 13, 2025. Opinion [Doc. No. 49], JA 3-13. The district court concluded that the crucial question raised by Experian's motion was whether and to what extent the requirements of § 1681s-1 conflicted with or superseded the requirements of § 1681e(b) and § 1681i(a). *Id.* at p. 7, JA 9. To answer this question, the district court relied upon the Sixth Circuit's recent decision in *Berry* and concluded that, "while CRAs are required to report information from child support agencies, they are not as a matter of law protected from claims under §§ 1681e(b) and 1681i for having done so." *Id.* at p. 8, JA 10. Thus, even when a CRA repeats information reported by a state or local child support enforcement agency, "it is necessary to proceed to a traditional analysis under §§ 1681e(b) and 1681i." *Id.*

The district court then discussed the governing legal standards under the FCRA for this "traditional analysis." It noted that, a cause of action under § 1681e(b) and a cause of action under § 1681i(a) both "require a showing that the reported information was inaccurate." *Id.* at p. 9, JA 11. It also noted that reporting is inaccurate "'when it is patently incorrect or when it is misleading in such a way and to such an extent that it

can be expected to have an adverse effect.'" *Id.* (quoting *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011)).

Applying these standards, the district court acknowledged that Experian essentially conceded that its reporting was inaccurate in numerous respects. As the district court pointed out, "Defendant is not moving for summary judgment on the basis that the reported information was accurate, nor could it. There are certainly inconsistencies and illogicalities that make it probable if not certain that there were, at times, inaccuracies in Plaintiff's credit reports." Opinion at p. 9, JA 11. The district court concluded that "[t]he pertinent inquiry is not whether the information was inaccurate, but whether the inaccuracies were due to Defendant failing to follow reasonable procedures under §1681e(b), and whether a reasonable investigation would have uncovered the inaccuracies under §1681i(a)." *Id.*

The district court answered this inquiry by concluding that "Plaintiff has failed to put forth a genuine issue of material fact to show either that Defendant's procedures or reinvestigation were unreasonable." Opinion at p. 10, JA 12. It explained:

> Defendant was required to report Plaintiff's information and did so accurately as it was received from the DCSE. When Plaintiff raised doubts numerous times as to the accuracy of the information that the DCSE was reporting, Defendant followed up with the DCSE each time to confirm that it was accurately reporting the information. As previously acknowledged, there certainly may have been inaccuracies in the DCSE's reporting of Plaintiff's information, but to hold Defendant liable on the facts in this case would essentially turn the FCRA into a strict liability statute.

*Id.* The district court suggested that the legal responsibility for the acknowledged inaccuracies lay with the DCSE, not Experian. *Id.*

The district court also rejected Plaintiff's argument that Experian's failure to investigate seven of his disputes raised material questions of fact about whether Experian had complied with § 1681i(a). The district court concluded that Experian's investigative procedures were reasonable with respect to Plaintiff's disputes because Experian's failure to conduct those seven investigations would not have made any practical difference. Opinion at p. 10, JA 12. As the district court put it:

> While Defendant's mail-sorting protocol might be found unreasonable for some hypothetical case, it was not unreasonable as it relates to Plaintiff's case and claims. Plaintiff has not put forth any evidence which would plausibly suggest that these additional inquiries would have changed anything about the DCSE's reporting.

*Id.*

The district court then entered an Order of judgment for Experian on all of Plaintiff's claims. Order [Doc. No. 50], JA 2.

## SUMMARY OF ARGUMENT

The FCRA's core purpose is to assure that consumer reporting is accurate. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007). In light of that purpose, the FCRA requires that CRAs adopt reasonable procedures to assure maximum possible accuracy in their reporting. 15 U.S.C. § 1681e(b). In addition, the FCRA provides that when a consumer disputes the accuracy of information reported by a CRA, the CRA must conduct a reinvestigation of the information to assure that it continues to meet the FCRA's overarching standard of accuracy. 15 U.S.C. § 1681i(a). In the context of the FCRA, information is inaccurate when it is either patently incorrect or when it creates a materially misleading impression of a consumer's creditworthiness, character, or mode of living. *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

The FCRA also requires CRAs to report information about child support payments when such information comes from state or local child support enforcement agencies. 15 U.S.C. § 1681s-1. But this obligation regarding child support payment information does not supersede a CRA's duty to take reasonable steps to assure maximum possible accuracy. *Berry v. Experian Info. Sols., Inc.* 115 F.4th 528 (2024). Even though it must report information from child support enforcement agencies, it must also follow reasonable reporting and investigative procedures to assure that the agency's information does not create a misleading impression about a consumer. *Id.* at 537.

The district court erred in granting summary judgment to Experian because, although it professed to follow the principles set forth in *Berry*, it failed to correctly

balance the FCRA's overarching requirement for accuracy with its requirements for reporting child support payment information. The district court erred when it concluded that Experian did not violate the FCRA when it reflexively repeated DSCE's information, even though the record demonstrated that the DSCE's information was clearly incorrect. The district court further erred when it concluded that Experian had no duty to correct the misleading impression created by the DSCE's inaccuracies by supplementing the DSCE's information with additional, accurate information. Specifically, the district court erroneously concluded that, as a matter of law, Experian did not have to provide a more accurate context for the agency's information at the time of its initial reporting or when conducting an investigation pursuant to Plaintiff's disputes. Finally, he district court also erred when it concluded that, as a matter of law, Experian did not violate the FCRA when it simply declined to conduct any investigation of seven of Plaintiff's disputes.

## ARGUMENT

**I.** **Under the FCRA, a CRA's statutory duty to report information from state and local child support enforcement agencies does not supersede its statutory duty to follow procedures to assure maximum possible accuracy. Experian reported demonstrably inaccurate information from the DCSE while refusing to also report other accurate information.**

Congress has established, and the federal courts have recognized, that the overarching purpose of the FCRA is to assure accuracy in consumer reporting. In granting summary judgment to Experian, the district court disregarded this purpose by ruling, as a matter of law, that Experian satisfied its FCRA obligations when it repeatedly chose to report only the inconsistent, self-contradictory, and otherwise inaccurate information from a state child support enforcement agency, while ignoring additional, accurate information. The district court's ruling is contradictory to fundamental legal principles repeatedly recognized by the federal courts, including this Court. As such, the district court's summary judgment ruling depends upon legal error and should be reversed.

### A. Standard of Review

This Court conducts a *de novo* review of a district court's rulings on motions for summary judgment under Fed. R. Civ. P. 56. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Accordingly, this Court's review applies the same standard that the district court applied in deciding whether summary judgment was appropriate. *Id.*

Rule 56(c) provides that a court may grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to

a judgment as a matter of law." The moving party bears the initial burden of showing that no genuine issues of material fact exist in light of the pleadings, evidence produced in discovery, and affidavits submitted by the parties. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

An issue is "material" if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

## B.      The Elements of Plaintiff's Causes of Action under § 1681e(b) and § 1681i(a)

The FCRA's plain language requires that CRAs must take reasonable action to assure that their consumer reports are accurate and that they properly utilize all relevant information. Congress expressly found that "fair and accurate credit reporting" is crucial to the effective operation of the United States' banking system and broader economy and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's privacy." 15 U.S.C. § 1681(a). Accordingly, the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

Federal courts have long recognized that the FCRA aims to assure that CRAs follow reasonable practices to assure that their reporting is fair and accurate. The Supreme Court has recognized that "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco*, 551 U.S. at 52. Likewise, this Court has noted that the FCRA "'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Because assuring accuracy is one of the FCRA's core purposes, it is a threshold consideration for both causes of action asserted by Plaintiff in this case. A plaintiff can establish a violation of § 1681e(b) if they can establish four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

Accuracy is also the threshold element for proving a cause of action under 15 U.S.C. § 1681i(a). This provision gives CRAs a duty to conduct a reinvestigation when a consumer disputes the accuracy or completeness of an item of information in a

consumer report. To prove that a CRA violated its duty to reinvestigate, a plaintiff "must establish that [the CRA] had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez*, 617 F.3d at 713. Of course, a plaintiff cannot establish these elements unless he can show that, as an initial matter, there was inaccurate information in his consumer report. *See id.* (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

### C. The FCRA Requires Maximum Possible Accuracy in Consumer Reporting

The FCRA imposes an exacting standard for accuracy. "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). The federal judiciary has repeatedly recognized that Congress' choice to use the phrase "maximum possible accuracy" reflects that the FCRA's standard for accuracy is a very high burden to bear. *See, e.g., Erickson v. FADV Background Servs.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (holding that the phrase "maximum possible accuracy" means "greatest in quantity or highest in degree attainable."). This standard also requires that, whenever a consumer disputes the accuracy of a CRA's information, the CRA must verify the accuracy of its reporting by "conduct[ing] a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i (a)(1)(A).

Under the FCRA, information is inaccurate not only when it is patently false, but also when it is technically accurate but materially misleading because it omits additional relevant information. This Court has held that information is inaccurate if it is "factually incorrect" or "if, through omission, it 'create[s] a materially misleading impression.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). Other federal circuit courts agree: "every circuit to have considered whether to apply a technical-accuracy standard under § 1681e(b) has declined to do so and has instead adopted an 'inaccurate or misleading' standard." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020) (citing cases); *see also Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 813 (7th Cir. 2023) ("a credit report that creates a materially misleading impression of the borrower's creditworthiness through the omission of accurate information is not accurate").

In order to determine whether a CRA's reporting meets the FCRA's high standard for accuracy, courts apply an objective standard: "[W]hen evaluating whether a report is accurate under the [FCRA], we look to the objectively reasonable interpretations of the report." *Erickson*, 981 F.3d at 1252. Importantly, as this Court has held, application of this objective standard – particularly concerning whether information is materially misleading – is a question for the jury. *See Seamans*, 744 F.3d at 865 (cleaned up) ("Whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect is generally a question to be submitted to the jury.").

Federal courts have consistently held that consumer reports are inaccurate when they omit information relevant to understanding all of the circumstances surrounding a debt. For instance, in *McIntyre v. RentGrow, Inc.*, 34 F.4th 87 (1st Cir. 2022), a tenant-screening report listed two closed collection actions against the plaintiff as though they were still pending, permitting the impression that the plaintiff currently owed outstanding judgment debts. In fact, the listed collection actions had been concluded. One was withdrawn and the plaintiff had paid off the amount demanded in the other. The First Circuit concluded that "[a] jury could find that this omission constituted a material inaccuracy." *Id.* at 97. The Eleventh Circuit has reached a similar conclusion, holding that it was inaccurate to report a debt as outstanding when it was discharged in bankruptcy, even though the debt still existed in a purely technical sense. *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937 (11th Cir. 2021).

The First and Eleventh Circuits are far from alone, with other Circuit Courts of Appeals similarly holding that the omission of material information is inaccurate under the FCRA. *See Saunders*, 526 F.3d at 148 (Fourth Circuit holding that even though it was "technically accurate" that a consumer had missed payments, a jury could have reasonably concluded that reporting the debt without any mention that the consumer disputed the debt was misleading); *Pinner v. Schmidt*, 805 F.2d 1258, 1262-63 (5th Cir. 1986) (Fifth Circuit holding that reporting "litigation pending" but omitting the fact that the consumer had brought the suit, was misleading).

Similarly, district courts across the country hold that it is misleading to omit critical information about a debt. *See Garcia v. Equifax Info. Servs., LLC*, No. 8:22-cv-1987-WFJ-UAM, 2024 U.S. Dist. LEXIS 71560 (M.D. Fla. Apr. 19, 2024) (holding that even though it was technically correct to report that a bank had charged off a consumer's debt, because the bank omitted information that contextualized the charge-off, a jury question existed as to whether the bank's reporting was misleading); *Williams v. Experian Info. Sols., Inc.*, No. C22-5840 MJP, 2024 U.S. Dist. LEXIS 26852 (W.D. Wash. Feb. 15, 2024) (denying summary judgment and holding that a jury question existed when a furnisher omitted information that a consumer's ex-spouse had agreed to repay a loan and indemnify the consumer); *Curtis v. Trans Union, LLC*, 2002 U.S. Dist. LEXIS 23471, at *13 (N.D. Ill. Dec. 9, 2002) (holding that Trans Union's failure to "include[] information about [the plaintiffs'] pending state lawsuit" created a genuine issue of fact as to whether this omission was misleading); *Gunn v. JPMorgan Chase Bank, N.A.*, No. 8:24-53-AAQ, 2025 U.S. Dist. LEXIS 55707, at *4 (D. Md. Mar. 26, 2025) (holding that even though it was technically correct that a consumer's account had been charged off, the creditor's failure to report information about the consumer's payment plan was misleading).

### D.     The FCRA's Child Support Reporting Requirements

Along with its overarching requirement for "maximum possible accuracy," the FCRA also requires that CRAs report information about child support payments when

that information comes from state or local child support enforcement agencies. *See* 15 U.S.C. § 1681s-1. Enacted as the "Ted Weiss Child Support Enforcement Act of 1992," 102 P.L. 537, 106 Stat. 3531, § 1681s-1 creates a uniform rule for the reporting of child support obligations. In its entirety, it provides that:

> Notwithstanding any other provision of this subchapter, a consumer reporting agency shall include in any consumer report furnished by the agency in accordance with section 1681b of this title, any information on the failure of the consumer to pay overdue support which—
>
> (1)    is provided—
>
>     (A)    to the consumer reporting agency by a State or local child support enforcement agency; or
>
>     (B)    to the consumer reporting agency and verified by any local, State, or Federal Government agency; and
>
> (2)    antedates the report by 7 years or less.

15 U.S.C. § 1681s-1.

According to this plain language, when furnishing a consumer report in accordance with § 1681b, a CRA "shall include . . . any information on the failure of the consumer to pay overdue support" that is no more than seven years old and that meets either of two conditions: (1) if the information is provided to it "by a State or local child support enforcement agency;" or (2) if the information is provided to it "and verified by any local, State, or Federal Government agency."

**E.    The Relationship between a CRA's Duties under § 1681s-1 and its duties under §§ 1681e(b) and 1681i(a)**

This Court has not addressed the question about how CRAs must balance their duties under § 1681s-1 with their duties under § 1681e(b) and § 1681i(a). But the Sixth Circuit has recently decided this question in *Berry v. Experian Info. Sols., Inc.* 115 F.4th 528 (2024). As the district court recognized, the Sixth Circuit's decision in *Berry* is particularly instructive because the underlying facts in that case are very similar to those presented here.

In *Berry*, a Michigan court had ordered the plaintiff to make child support payments to his ex-wife, but, pursuant to a stipulation from the parties, it permitted the plaintiff to make his payments directly to her, not through the state child support enforcement agency. 115 F.4th at 534. The agency was informed about the child-support obligation, but not the court's order regarding the payment method; so it reported to Experian that the plaintiff had not made his payments. *Id.* When the plaintiff found out about the reporting by the agency and Experian, the plaintiff submitted a dispute and included copies of the court orders which permitted him to make payments directly to his wife. He also submitted other evidence to Experian to show that he had never missed any required payments. *Id.* Experian refused to change its reporting because the agency confirmed its reporting through the ACDV process. *Id.* Experian continued to report only the information that came from the state child support enforcement agency. *Id.*

The plaintiff sued Experian under § 1681e(b) and § 1681i(a), and Experian moved for judgment on the pleadings, contending – exactly as it does here – that it

entirely fulfilled its duties under the FCRA by repeating the information supplied by the agency, regardless of whether that information was accurate. The district court agreed and granted Experian's motion. *Berry*, 115 F.4th at 535. In the district court's view, Berry's claims were not actionable because Experian was required to report any and all information from the agency and nothing more. *Id.* In short, Experian's arguments in *Berry* were identical to those it made in this case, and the substance of the district court's holding in *Berry* was identical to that made by the district court in this case.

The Sixth Circuit rejected Experian's argument and reversed the district court's ruling, holding that it would be inaccurate for a CRA to report that a plaintiff was delinquent in paying child support if, in fact, there was no delinquency. *Berry*, 115 F.4th at 537. Given the plaintiff's allegations, the *Berry* Court concluded that, if proven, those allegations would satisfy the inaccuracy element of both § 1681e(b) and § 1681i because "[t]he FCRA does not allow Experian to remain immune from liability for reporting incomplete information that could be materially misleading and impact Berry's perceived creditworthiness." *Id.* In this connection, the Sixth Circuit relied upon principles enumerated by this Court, including embracing the notion that "'Congress surely did not intentionally weave an exception into . . . the FCRA that would destroy its remedial scheme by allowing a [CRA] to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party.'" *Id.* (quoting *Cortez*, 617 F.3d at 709-10), Thus, the *Berry* Court held that – even if Experian were required to report the information from the agency – it

could be liable under § 1681e(b) and/or § 1681i if its reporting was incomplete or misleading because it omitted accurate information from other sources. *Id.*

The Sixth Circuit's analysis in *Berry* is extremely persuasive authority in this case because it conforms to the fundamental principles of the FCRA as they are set forth in the statutory text and as they have been explained by this Court in numerous decisions. *See Seamans, supra; Cortez, supra; Cushman, supra; Philbin, supra.* In the district court here, and in *Berry*, Experian has identified some case law to support its argument that, in light of the requirements of § 1681s-1, its only duty is to report the information that comes from a state or local child support agency, regardless of its accuracy. *See* Memorandum [Doc. No. 20-2] at pp. 10-11, JA 71-72 (citing cases); see also *Berry*, 115 F.4th at 534-35. But this case law does not support the arguments that Experian makes, nor is it applicable here.

Experian has argued that the Seventh Circuit's opinion in *Johnson v. Trans Union, LLC*, 524 F. App'x 268 (7th Cir. 2013) supports its position, but the undisputed facts in *Johnson* show that, unlike here, the information from the state child support enforcement agency was accurate. In *Johnson*, the consumer – who represented himself *pro se* in both the district court case and before the Seventh Circuit – did not dispute that he was late in making child support payments. *Id.* at 271. Instead, the consumer's contention was that the CRA-defendants had improperly relied on information from the state child support enforcement agency when they should have relied only upon a judicial order. *Id.* at 271. The Seventh Circuit specifically noted that the consumer "did

not put forward any evidence that [the CRA] reported any inaccurate information about him." *Id.* at 269. Consequently, *Johnson* is simply beside the point here.

Experian has also pointed to several district court cases, contending that their holdings, like the holding in *Johnson*, give CRAs free reign to report inaccurate information to the exclusion of additional, accurate information, as long as such inaccurate information comes from a state child support enforcement agency. However, Experian fails to recognize – or hopes that this Court will not recognize – the obvious, glaring distinction between these cases and the case before the Court. Namely, in each of these cases relied upon by Experian, the plaintiffs either never alleged any factual basis for an inaccuracy or admitted that the information was accurate.

In two of these cases, as in *Johnson*, the plaintiffs **admitted the accuracy of the information** supplied by the state child support enforcement agency. *Underwood v. Experian Info. Sols., Inc.*, No. 16 C 7829, 2017 U.S. Dist. LEXIS 52244, at *7 (N.D. Ill. Apr. 5, 2017) ("the complaint also alleges facts establishing that Underwood was at multiple points overdue on his child support obligations"); *Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 U.S. Dist. LEXIS 59163, at *13-14 (N.D. Tex. Apr. 25, 2013) ("Norman admits he has not paid toward either of the child support accounts at issue since 2003."). In another, the plaintiff alleged no factual basis for showing that the information from the state child support enforcement agency was inaccurate. *Bath v. Boundy*, Civil Action No. 18-cv-00384-RBJ-STV, 2018 U.S. Dist. LEXIS 218934, at *7

(D. Colo. June 19, 2018) ("Plaintiff's Complaint merely parrots the legal elements for various FCRA violations, without providing any factual basis for such violations.").

Taken together, Experian's authority from courts outside this circuit do not support the proposition that a CRA fulfills its duties under the FCRA when it reports information from a child support enforcement agency and nothing more, even when the agency's information is inaccurate and even when there is additional, accurate information that could counter any misleading impressions that might be drawn from the agency's information alone. Indeed, Experian's previously cited cases do not address this proposition. Accordingly, the most authoritative and applicable case law for the questions presented here comes from *Berry*. Like the Sixth Circuit in *Berry*, this Court should come to the logical conclusion: § 1681s-1 does not supersede the FCRA's requirements relating to accuracy.

> **F.** **There were factual questions about whether Experian complied with its duties under § 1681e(b) and § 1681i(a) when it parroted the DCSE's reporting and did not include additional information to demonstrate the inaccuracies in that reporting.**

According to the analysis set forth in *Berry*, there was evidence in the record here to create questions of material fact about whether Experian complied with its duties under § 1681e(b) and § 1681i(a). Although Experian reported the information that it received from DSCE, it omitted other information that would have provided a more complete picture of the status of the Account. Importantly, this information was readily available to Experian since it existed within Experian's own records, which showed for

years that the Account was reported as fully paid and closed. When Experian parroted the DSCE's reporting that the Account was open and when it indicated that the Account was in collections, and when it chose to exclude additional, relevant information about the Account, it created a misleading impression about the nature and extent of Plaintiff's obligations on the Account.

However, and more importantly, Experian's reporting created a misleading impression about Plaintiff's creditworthiness. The undisputed facts show that the Account was closed in 2017, at which time Plaintiff had satisfied all amounts owed under the Account. SMF at ¶ 5, JA 45. There is **no evidence in the record** to support the assertion that the Account was in a collection status in November 2021, March and April 2022, or March 2023, and yet Experian reported that the Account **was** in a collection status in those months. SMF at ¶ 21, JA 48. Considering the nature of these inaccuracies, an "objectively reasonable interpretation" (*Erickson*, 981 F.3d at 1252) of Experian's reporting about the Account would lead a creditor to believe that Plaintiff had been so delinquent that the Account had been forced into collections on multiple occasions. *See*, e.g., *Abukhodeir v. AmeriHome Mortg. Co., LLC*, No. 8:21-cv-563-WFJ-JSS, 2021 U.S. Dist. LEXIS 149742 (M.D. Fla. Aug. 10, 2021) (holding that consumer-plaintiffs had plausibly alleged a furnisher's reporting was misleading based on the furnisher's role in autopayments failing to properly process because "it is thus plausible that AmeriHome's continued reporting of the late payments could have given potential lenders a false impression that Plaintiffs were responsible for the delinquencies and a

credit risk."); *see also*, *Monroe v. Grow Fin. Fed. Credit Union*, No. 8:22-cv-1333-WFJ-JSS, 2022 U.S. Dist. LEXIS 218703 (M.D. Fla. Dec. 5, 2022) (holding that reporting an account as a charge off when the furnisher had authority to transfer the consumer's funds from another account could give potential creditors a false impression concerning the consumer's financial responsibility as a debtor).

A reasonable jury could have found that Experian violated its duties under § 1681e(b) and § 1681i(a) when it deliberately chose not to supplement the information from DSCE with other, accurate information.

The first question of material fact pertains to the accuracy of Experian's reporting. As noted above, this is the threshold question for Plaintiff's causes of action under both § 1681e(b) and § 1681i(a). Although § 1681s-1 required Experian to report the information from DCSE, a reasonable jury could have found that it was, at the very least, misleading for Experian to omit other information from its reporting, particularly after September 2023, when DCSE started reporting that the account was open and that it had been in collection status in November 2022. Experian could have supplemented the information from DCSE by noting that the Account had been opened in 2003, closed in 2017, and that DCSE had consistently reported that it was "paid" and "closed" between 2017 and 2023. This additional information could have permitted a user of Plaintiff's consumer report to rightly question the accuracy of DCSE's current reporting. To such a user, it would certainly seem incongruous, if not impossible, for a child support account to be open for fourteen years, listed as "closed"

and "paid" for six, then somehow reopened again in delinquent status. But, because Experian reported DCSE's inaccurate information without the necessary context, a user of Experian's consumer reports would have no reason to suspect that DCSE's information might be less than perfectly accurate. Instead, because Experian refused to provide this context despite Plaintiff's repeated pleas, any person reading Experian's flagrantly inaccurate reports likely came to the conclusion that Plaintiff was a severe credit risk. In that respect, a reasonable jury could find that Experian's omission of contextual information made its reporting misleading, and, therefore, inaccurate.

The inaccuracy of Experian's reporting necessarily raised questions about the reasonableness of both its reporting and investigative procedures. Federal courts, including the Third Circuit, recognize that, for both § 1681e(b) and § 1681i(a), a question about "the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Cortez*, 617 F.3d at 709 (3d Cir. 2010 (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)); *see also Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). Indeed, this Court has made clear that when a plaintiff can demonstrate an inaccuracy – which clearly is the case here – the reasonableness prong of the § 1681e(b) analysis has a lesser standard. Under *Cortez*, it is clear that a district court may infer a failure to follow reasonable procedures "from the mere fact of an inaccuracy." *Cortez*, 617 F.3d at 710 (citing *Philbin*, 101 F.3d at 965). Alternatively, the Court may hold that "upon demonstrating an inaccuracy, **the burden**

**shifts to the defendant to prove that reasonable procedures were followed**." *Id.* The highest standard enumerated by this Court requires a plaintiff to only produce "some evidence" in addition to the inaccuracy. *Id.* Under any of these standards, Plaintiff produced evidence sufficient to preclude summary judgment.

The undisputed facts about Experian's reporting provide a more than adequate foundation to raise a question for the jury about whether Experian's reporting procedures were reasonable for the purposes of § 1681e(b). From the time that DCSE began reporting information that was inconsistent with its previous reporting, Experian's own records and previous reporting gave it ample reason to doubt the accuracy of DCSE's information and to supplement that information with context about the Account's history and about the incongruities in DCSE's prior reporting. If nothing else, a jury could find that Experian should have seen a red flag and added contextual information to its reporting when DCSE supplied information that a twenty-year old child support account had suddenly reopened and that it was in collection status after having been reported as "paid" for more than six years. This evidence shows not only that Experian reported inaccurate information, but that Experian had contradictory information **already within its possession** – to say nothing of Plaintiff's constant reminders of the same – sufficient to demonstrate the inaccuracy. This easily satisfies even the strictest of this Court's three avenues identified in *Philbin* and *Cortez*.

Similarly, a jury could find that Experian's reinvestigations were unreasonable for the purposes of § 1681i(a). There is no dispute that, in response to eleven of Plaintiff's

eighteen disputes, Experian's reinvestigations consisted entirely of submitting an ACDV inquiry to DCSE. The ACDV process is entirely automated and only serves to confirm that the information reported by the CRA is the information that the furnisher supplied. Experian admits that it never did anything beyond activating this automated procedure. It did not have a human being reach out to DCSE and ask to explain the inconsistencies and incongruities in DCSE's reporting. It simply had its computer ask DCSE's computer. A jury can – and likely will – find that this is unreasonable in light of all of the facts and circumstances of this case.

Undisputed facts provide an even stronger foundation for a reasonable jury to find that Experian acted unreasonably when it simply failed to conduct any reinvestigation at all to seven of Plaintiff's disputes. The text of § 1681i(a) gives CRAs a duty to conduct a reinvestigation each and every time that a consumer submits a dispute. Indeed, the statute mandates investigations for every consumer dispute, providing that a CRA "**shall**, free of charge, conduct a reasonable reinvestigation" when a consumer disputes the accuracy of reported information." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Moreover, although the statute identifies two permissible reasons for terminating a reinvestigation – if the dispute is "frivolous or irrelevant" – the statute contains nothing to suggest that a CRA can simply decline to conduct a reinvestigation. See 15 U.S.C. § 1681i(a)a(3)(A) (discussing the circumstances under which a CRA may "terminate a reinvestigation"). Because the statute identifies specific limitations on the duty to reinvestigate, and because it does not include anything to suggest that CRAs can

sometimes decline to conduct any reinvestigation, it should be construed to exclude the provision of discretion to CRAs about whether they will reinvestigate at all. *PJM Power Providers Grp. v. FERC*, 96 F.4th 390, 400 n.6 (3d Cir. 2024). In light of this construction of § 1681i(a), and in light of Experian's admission that it never bothered to investigate seven of Plaintiff's disputes, there is a question about whether Experian violated its duty to reinvestigate when it simply refused to reinvestigate seven of Plaintiff's disputes.

Even Experian's proffered reason for its occasional refusal to reinvestigate also shows that there is a question for the jury about whether it fulfilled its duty to reinvestigate. In the district court, Experian argued that it can decline to conduct a reinvestigation if it reasonably believes that a dispute came from a third party and was not directly submitted by the consumer himself. *See* Memorandum [Doc. No. 20-2] at 14-16, JA 75-77. By contending that its mail screening process is a reasonable procedure for conducting an investigation, Experian raises precisely the kind of question of reasonableness that is reserved for a jury. *See Cortez*, 617 F.3d at 709.

To be clear, Experian has never meaningfully argued that its reporting was accurate. Instead, Experian vaguely alluded to the fact that it was, indeed, reporting inaccurate information. *See*, e.g., Memorandum [Doc. No. 20-2] at 7, JA 62 ("**If the information is indeed inaccurate, Plaintiff's claims lie against NYS DCSE, not Experian.**"). Indeed, the evidence clearly demonstrates that Experian's reporting was inaccurate, period, full stop. In effect, Experian asks Court to write brand new law and hold that CRAs can knowingly report inaccurate information if the information comes

from certain sources. Doing so would cut at the very heart of the FCRA, which was written to assure accuracy in credit reporting. Moreover, given that aspects of the FCRA are rooted in principles borrowed from common law defamation, it would be particularly harmful for this Court to endorse the notion that inaccurate information can be knowingly included in consumer reports dependent on the source. A lie is a lie whether told by a scoundrel or spoken by a saint. This Court should not lend its authority to chipping away at the FCRA's foundational requirements relating to accuracy.

### G. There were factual questions about whether Experian willfully violated the FCRA.

The record also includes undisputed facts and evidence to show that Experian's violations of the FCRA were willful. Under 15 U.S.C. § 1681n(a)(1)(A), a consumer may be entitled to statutory and punitive damages when a defendant "willfully" violates the requirements of the FCRA. A willful violation occurs when a defendant knowingly violates those requirements or when it recklessly disregards them. *Safeco*, 551 U.S. at 56-58, 71. A violation is reckless if it involves "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. A willful violation can also arise when the defendant's conduct is premised upon an interpretation of the FCRA that is not objectively reasonable. *Seamans,* 744 F.3d at 868 ("[O]bjectively unreasonable actions with respect to a particular consumer's account can support a finding of willfulness.").

A reasonable jury could find that Experian's violations were willful in either or both of two ways. First, a jury could conclude that Experian recklessly disregarded its duties when it deliberately chose to ignore seven of Plaintiff's disputes. Experian argued that its mail-sorting procedures reflected an objectively reasonable understanding of its duties under § 1681i(a). Memorandum [Doc. No. 20-2] at 18, JA 79. But, because reasonableness is almost always a jury question in the context of the FCRA, the willfulness of this particular approach to investigations is not a question appropriately resolved on summary judgment. *See Cortez*, 617 F.3d at 709. Second, a jury could find that Experian deliberately issued inaccurate consumer reports when it regurgitated the DSCE's information without providing additional information that would clarify or provide context for the DSCE's information. To be sure, Experian did not have the benefit of the Sixth Circuit's ruling in *Berry* when it engaged in the conduct at issue here; but a jury could find that Experian acted in reckless disregard of its duty under § 1681e(b) and § 1681i(a) when it reported and declined to supplement the DSCE's incongruous and inconsistent reporting.

### H. The district court erred because it granted summary judgment when the undisputed facts and evidence raised material questions of fact.

The district court erred because it failed to recognize that any or all of these questions precluded summary judgment. This failure begins with the district court's misunderstanding of the analysis in *Berry*. Although the district court correctly recognized that *Berry* was persuasive authority here, it failed to apply its core holding:

that a CRAs duty under § 1681s-1 does not supersede the accuracy requirements imposed by § 1681e(b) and § 1681i(a). It concluded that there was no dispute that Experian accurately restated the information that it received from DCSE and that "Plaintiff has failed to put forth a genuine issue of material fact to show either that Defendant's procedures or reinvestigation were unreasonable." Opinion at p. 10, JA 12. As noted above, Plaintiff identified ample evidence to show that DSCE contradicted itself and its own prior reporting when it asserted that the Account was open and had delinquencies when, in fact, it had been closed and fully paid years earlier. Even though § 1681s-1 required Experian to report the information from DCSE, the FCRA does not permit a CRA to report such information to the exclusion of other information that is accurate and reliable and that supplies necessary context for the DCSE's reporting. *See Berry*, 115 F.4th at 537. This applies to both its reporting and to its reinvestigations.

The district court also erred because it failed to recognize that Experian's decision to ignore seven of Plaintiff's disputes raised a material question of fact about whether Experian complied with § 1681i(a). The district court concluded that Experian's repeated refusal to investigate reflected a reasonable procedure because there was no evidence that the seven omitted investigations would have uncovered any inaccuracies. Opinion at p. 10, JA 12. But this conclusion is premised on the proposition that a CRA has the discretion to refuse to reinvestigate a consumer's second or successive dispute if it reasonably believes that the dispute will be unsuccessful. As explained above, there is nothing in the text of the FCRA or in case law to remotely

suggest that CRAs have the discretion to ignore disputes when they anticipate that the dispute is unlikely to succeed on the merits. Nor is there anything in the FCRA that limits a consumer's right to a reinvestigation upon submitting a dispute, even if he has previously and unsuccessfully disputed the same information.

Although Experian raised the issue of willfulness in its summary judgment brief, (Memorandum [Doc. No. 20-2] at 16-18, JA 77-79), the district court did not address the question of whether Plaintiff's allegations of willful violations, as distinct from his allegations of negligent violations, could be resolved as a matter of law at the summary judgment stage. But, as noted above, the undisputed facts and evidence create questions about willfulness that must go to a jury.

## CONCLUSION AND RELIEF REQUESTED

Experian's duty to report information from state child support enforcement agencies does not give it a license to disregard the FCRA's foundational requirement that CRAs must act reasonably to assure maximum possible accuracy. Here, Experian had more than ample reason to know that there was something wrong with information reported by DSCE. It could have supplemented that incongruous and inconsistent information, providing context that would have made its reports more accurate. It could have conducted an investigation that involved something more than an automated exchange of information between its computers and DCSE's computers. It could have conducted investigations in response to all of Plaintiff's disputes, not just some of them. But it chose not to do any of these things, preferring to let the users of its reports be misled about Plaintiff's performance of his child support obligations. Because a reasonable jury could conclude that Plaintiff's chosen course of action violates the FCRA and that its violations were negligent and/or willful, the district court erred in granting summary judgment to Experian. Plaintiff asks this Court to reverse the district court's Order granting summary judgment [Doc. No. 50], JA 2, and remand this case to the district court with instructions for further proceedings.

Dated: April 29, 2025,                    Respectfully submitted,

/s/ James Ristvedt
James Ristvedt, AZ Bar #035938
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1956
F: (718) 715-1750
E: jristvedt@consumerjustice.com

*Attorneys for Plaintiff-Appellant Echol Watkins*

## COMBINED CERTIFICATIONS

1.     This brief complied with Local Rule 46.1(e) because James Ristvedt, counsel for Plaintiff-Appellant, is a member of the bar of this court.

2.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 9,584 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because the brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

3.     I certify that on April 29, 2025, I filed this brief electronically via this Court's CM/ECF system. All participants in this appeal are registered CM/ECF users and will be served by the CM/ECF system.

4.     The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5.     This document was scanned for viruses using Trend Micro Maximum Security and no virus was detected.

Dated: April 29, 2025,        */s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM**

*Attorneys for Plaintiff-Appellant Echol Watkins*

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

### No. 25-1250

———————

ECHOL WATKINS,
*Plaintiff-Appellant*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Defendant-Appellee.*

———————

United States District Court
for the District of New Jersey

Civ. No. 2:23-cv-20860-SDW-SDA

———————

## JOINT APPENDIX – VOLUME 1 (JA 1-13)

———————

James Ristvedt
**CONSUMER JUSTICE LAW FIRM**
8095 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-1956
E: jristvedt@consumerjustice.com

*Attorneys for Plaintiff-Appellant*
*Echol Watkins*

Nathaniel Garrett
**JONES DAY**
555 California Street
San Francisco, CA 94104
T: (415) 626-3939
E: ngarrett@jonesday.com

Eric A. Nicholson
**JONES DAY**
150 West Jefferson Avenue
Detroit, MI 48226
T: (313) 230-7927
E: eanicholson@jonesday.com

*Counsel for Defendant-Appellee*
*Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

| Date | ECF No. | Document | Page |
|---|---|---|---|
| **VOLUME 1 of 3** | | | |
| February 11, 2025 | 52 | Notice of Appeal | JA 1 |
| January 13, 2025 | 50 | Order Granting Experian's Motion for Summary Judgment | JA 2 |
| January 13, 2025 | 49 | Opinion Granting Experian's Motion for Summary Judgment | JA 3 |
| **VOLUME 2 of 3** | | | |
| | | Civil Docket Sheet | JA 14 |
| October 3, 2023 | 1 | Complaint | JA 21 |
| July 11, 2024 | 20 | Experian's Motion for Summary Judgment | JA 41 |
| | 20-1 | Rule 56.1 Statement of Undisputed Material Facts | JA 44 |
| | 20-2 | Memorandum of Law in Support of Experian's Motion for Summary Judgment | JA 56 |
| | 20-3 | Declaration of Teresa Iwanski | JA 85 |
| | 20-4 | Certification of John Robert B. DeLaney | JA 93 |
| August 22, 2024 | 35 | Experian's Notice of Supplemental Authority | JA 95 |
| | 35-1 | Exhibit A – Berry Opinion | JA 99 |
| August 27, 2024 | 36 | Plaintiff's Response to Experian's Notice of Supplemental Authority | JA 120 |
| August 28, 2024 | 37 | Plaintiff's Notice of Supplemental Authority | JA 124 |
| | 37-1 | Exhibit A - Stecklein Decision | JA 128 |
| September 5, 2024 | 40 | Experian's Response to Plaintiff's Notice of Supplemental Authority | JA 136 |
| December 12, 2024 | 55 | Oral Argument Transcript | JA 138 |
| **VOLUME 3 of 3 (SEALED)** | | | |
| | | Exhibits to Experian's Motion for Summary Judgment | |
| July 11, 2024 | 21 | Exhibit A – New York Child Support | JA 172 |
| | 21-1 | Exhibit B – ACDVs | JA 183 |
| | 21-2 | Exhibit C – CRRG | JA 195 |
| | 21-3 | Exhibit D – Consumer Disclosures PA 825 Dispute Results | JA 200 |
| | 21-4 | Exhibit E – Direct Dispute Mail | JA 211 |
| July 11, 2024 | 22 | Exhibit F – Disputes Classified as Third-Party Mail | JA 225 |

| Date | ECF No. | Document | Page |
|---|---|---|---|
| | 22-1 | Exhibit G – TopMark Credit Report | JA 318 |
| | 22-2 | Exhibit H – Chase Denial Letter | JA 328 |
| July 12, 2024 | 23 | Exhibit I – Excerpts of Watkins Deposition | JA 331 |
| | 23-1 | Exhibit J – Excerpts of Norris Deposition | JA 371 |
| August 5, 2024 | 26 | Plaintiff's Opposition to Experian's Motion for Summary Judgment | JA 404 |
| | 26-1 | Plaintiff's Response to Statement of Material Facts in Opposition to Experian's Motion for Summary Judgment | JA 433 |
| | 26-2 | Plaintiff's Supplemental Statement of Material Facts | JA 451 |
| | 26-3 | Exhibit 1 – Excerpts of Experian Metro Reports | JA 456 |
| | 26-4 | Exhibit 2 – 30(b)(6) Deposition Transcript of Teresa Iwanski | JA 471 |
| | 26-5 | Exhibit 3 – Initial Credit Clinic Sorting Process Manual | JA 610 |
| | 26-6 | Exhibit 4 – Declaration of Damian Norris | JA 617 |
| | 26-7 | Exhibit 5 – Excerpt of Deposition Transcript of Plaintiff | JA 620 |
| August 19, 2024 | 33 | Experian's Reply in Support of Motion for Summary Judgment | JA 624 |
| | 33-1 | Experian's Response to Plaintiff's Rule 56.1 Statement | JA 645 |

Levi Y. Eidelman (NJ Bar No. 388242021)
**CONSUMER JUSTICE LAW FIRM**
72-47 139th Street
Flushing, New York 11367
T: (718) 360-0763
F: (480) 613-7733
E: leidelman@consumerjustice.com

*Attorneys for Plaintiff Echol Watkins*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ECHOL WATKINS, <br><br>      Plaintiff, <br><br> vs. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br>      Defendant. | Civil Action No.: 2:23-cv-20860-SDW-SDA <br><br> **NOTICE OF APPEAL** |

  **NOTICE IS HEREBY GIVEN**, pursuant to Federal Rules of Appellate Procedure 3(c)(1)

and 4(a)(1)(A), that Plaintiff Echol Watkins, by and through undersigned counsel, hereby appeals

to the United States Court of Appeals for the Third Circuit from the Court's Opinion (Doc. 49)

and Order (Doc. 50) entered in this action on January 13, 2025.


Dated: February 11, 2025,      */s/ Levi Y. Eidelman*
              Levi Y. Eidelman (NJ Bar No. 388242021)
              **CONSUMER JUSTICE LAW FIRM**
              72-47 139th Street
              Flushing, New York 11367
              T: (718) 360-0763
              F: (480) 613-7733
              E: leidelman@consumerjustice.com

              *Attorneys for Plaintiff Echol Watkins*

<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ECHOL WATKINS,<br><br>                    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>                    Defendant. | Civil Action No: 23-20860 (SDW) (SDA)<br><br>**ORDER**<br><br>January 13, 2025 |

**WIGENTON,** District Judge.

This matter, having come before this Court on Defendant Experian Information Solution's ("Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 20), and this Court having carefully reviewed and considered the parties' submissions, and this Court having heard oral argument on the motion on December 12, 2024, for the reasons stated in this Court's Opinion dated January 13, 2025

**IT IS** on this 13th day of January 2025,

**ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　___/s/ Susan D. Wigenton_____
　　　　　　　　　　　　　　　　　　　**SUSAN D. WIGENTON, U.S.D.J.**

Orig:　Clerk
cc:　　Stacey D. Adams, U.S.M.J.
　　　　Parties

JA 2

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ECHOL WATKINS,<br><br>               Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br><br>               Defendant. | Civil Action No: 23-20860 (SDW) (SDA)<br><br>**OPINION**<br><br>January 13, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Experian Information Solutions, Inc.'s ("Defendant" or "Experian") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 20 ("MSJ")).  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391.  This Court heard oral argument on December 12, 2024.

Defendant moves for summary judgment on Plaintiff's two claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  For the reasons stated herein, Defendant's MSJ is **GRANTED**.

## I.      PROCEDURAL HISTORY

On October 3, 2023, Plaintiff Echol Watkins ("Plaintiff" or "Mr. Watkins") filed a complaint against Defendant alleging two causes of action for failure to follow reasonable procedures and failure to perform a reasonable reinvestigation under the FCRA.  (D.E. 1 ("Complaint").)  Defendant answered the Complaint on November 14, 2023 (D.E. 7), and the

parties proceeded with discovery.  Defendant filed the instant MSJ on July 11, 2024, and the parties timely completed briefing.  (D.E. 20; 26; 33.)[1]

## II.    FACTUAL BACKGROUND[2]

### A.  The Fair Credit Reporting Act

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).  "Under [the] FCRA, [credit or consumer reporting agencies or 'CRAs'] collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Seamans v. Temple Univ.*, 744 F.3d 853, 861 (3d Cir. 2014).  Accordingly, the FCRA "imposes a variety of obligations on both furnishers and CRAs." *Id.*; *see also* 15 U.S.C. §1681s-2(b)(1)(A)-(D).

In 1992, Congress passed the Ted Weiss Child Support Enforcement Act, which "amend[ed] the Fair Credit Reporting Act to require the inclusion in consumer reports of information provided to consumer reporting agencies regarding the failure of a consumer to pay overdue child support."  Pub. L. No. 102-537, 106 Stat. 3531 (1992).  This amendment was

---

[1] This Court has also reviewed and considered the parties' submissions of supplemental authority.  (*See* D.E. 35–37; 40.)

[2] Facts cited in this opinion are drawn from Defendant's Statement of Material Facts (D.E. 20-1), Plaintiff's supplemental statement of undisputed material facts (D.E. 26-2), Plaintiff's responses to Defendant's Statement (D.E. 26-1) and Defendant's responses to Plaintiff's Statement (D.E. 33-1.)  Where a fact is undisputed, this Court will cite solely to the statement and not to the corresponding response.

codified at 15 U.S.C. 1681s-1.  Plaintiff alleges that Defendant violated two sections of the FCRA:

15 U.S.C. §1681e(b), which requires CRAs to "follow reasonable procedures to assure maximum

possible accuracy" of consumer information when providing a consumer report to a third-party,

and 15 U.S.C. §1681i(a)(1)(A), which requires CRAs to "conduct a reasonable reinvestigation to

determine whether the disputed information is inaccurate," in response to a consumer's dispute.

### B.  Plaintiff's Child Support Account

Plaintiff is a New Jersey resident and is a "consumer" as that term is defined in the FCRA.

(D.E. 20-1 ¶ 1.)  In 2003, the New York City Family Court ordered Plaintiff to begin making child

support payments of $156.00 per week.  (*Id.* ¶ 2.)  The New York City Office of Child Support

Enforcement ("OCSE") reported that Plaintiff's account was past due on several occasions over

the years.  (*Id.* ¶ 5.)  Plaintiff made his last child support payment on May 30, 2017 (*Id.* ¶ 6) and

the New York City Department of Social Services issued a letter on October 21, 2021 indicating

that Plaintiff's account was closed with no outstanding payments.  (*Id.* ¶ 7.)

### C.  Defendant's Credit Reporting

Experian is a "consumer reporting agency" as that term is defined in the FCRA.  (*Id.* ¶ 8.)

Defendant stores consumer data supplied by credit grantors, certain state and local agencies, and

public record vendors, also called "furnishers."  (*Id.*)  In this instance, the New York State Division

of Child Support Enforcement ("DCSE") is the "furnisher" that reported consumer data regarding

Plaintiff's child support account to Defendant.  (*Id.* ¶ 11.)  The DCSE reported status codes for

Plaintiff's account to Defendant, who in turn used those status codes to generate Plaintiff's credit

reports.  (*See id.* ¶¶ 9–22.)    From 2017 through 2020, Defendant reported Plaintiff's account as

"in Good Standing."  (D.E. 26-2 ¶ 1.)  In 2021, the DCSE began to report Plaintiff's account with

other codes, which resulted in changes to the credit reports.  The parties agree that, from October

2021 to September 2023, the DCSE reported Plaintiff's account either with a "62" status code, which a furnisher may use when the account is "satisfied" but was previously in collections, or without any status code, which signified that no data was available.  (D.E. 20-1 ¶ 18.)  During this period, Defendant's credit reports showed the "Status" as "Paid, Closed" with a "C" (for Collection) in the "Payment history" grid for November 2021, March and April 2022, and March 2023, and an "ND" (for No data for this period) for other months after November 2021.  (*Id.* ¶ 21.)  Then, as of September 2023, the DCSE reported Plaintiff's account with an "11" status code, which a furnisher may use when the account has been brought current but the statute of limitations for child support judgments has not yet been reached.  (*Id.* ¶ 19.)  Defendant's credit report then showed the "Status" as "Open" with a "C" (for Collection) in the "Payment history" grid for November 2022 and an "ND" (for No data for this period) for other months after November 2022.  (*Id.* ¶ 22.)

### D.    Plaintiff's Disputes and Defendant's Reinvestigations

From October 2021 to September 2023, Defendant identified eleven disputes that it believed to be submitted directly by Plaintiff.  (*Id.* ¶ 25.)  In addition to these eleven disputes, Defendant received seven disputes related to Plaintiff's account that it believed to be submitted from third parties.  (*Id.* ¶ 32.)  For each of the eleven disputes that came directly from Plaintiff, Defendant sent an Automated Credit Dispute Verification form ("ACDV") to the DCSE, which confirmed or updated the information and certified that the information it had provided was accurate.  (*Id.* ¶ 26.)

### E.  Plaintiff's Alleged Damages

Plaintiff's damages are predicated on denials of financing for a dump truck and a business credit card with Chase bank, and the resulting effects on his health.  The parties agree that Plaintiff

reached out to a salesman at Topmark Funding, LLC in an attempt to secure a loan for a dump truck for Plaintiff's business. (*Id.* ¶¶ 41–43.) The salesman reviewed a copy of Plaintiff's credit report, which indicated that the child support account was paid, but that it had been in collections in November 2021, March and April 2022, and March 2023. (*Id.* ¶ 44.) The salesman told Plaintiff that he was not likely to obtain funding, and referenced the child support account and a Bank of America account. (*Id.* ¶ 45.) Plaintiff never submitted a loan application to Topmark Funding, LLC. (*Id.* ¶ 46.) In February 2024, after Plaintiff filed this case, Plaintiff was denied for a Chase Visa Signature business card account with Chase bank. (*Id.* ¶ 47.)  Plaintiff alleges that he has experienced anxiety and heart palpitations due to his concern about Defendant's reporting of his child support consumer information. (*Id.* ¶ 49.)

### III.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)) The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

## IV.  <u>DISCUSSION</u>

### A.  **15 U.S.C. §1681s-1.**

The gist of Defendant's argument is that the FCRA provides no independent discretion to a CRA to determine whether information received from a child support agency is accurate or not; once Defendant received information from the furnisher that Plaintiff failed to pay child support, it had no choice but to report that information. Defendant relies primarily on §1681s-1 to support its position, which provides that, "[n]otwithstanding any other provision of this subchapter, a

consumer reporting agency shall include in any consumer report furnished by the agency . . . any information on the failure of the consumer to pay overdue support which . . . is provided . . . to the consumer reporting agency by a State or local child support enforcement agency." 15 U.S.C. §1681s-1. This Court is unaware of, and the parties have not cited to, any precedent from the Third Circuit regarding the precise meaning of this specific provision of the FCRA. However, common canons of statutory interpretation are instructive here. The word "notwithstanding" "shows which provision prevails in the event of a clash," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017), and "[t]he word 'shall' is 'mandatory' and 'normally creates an obligation impervious to judicial discretion.'" *Scott v. Vantage Corp.*, 64 F.4th 462, 476 (3d Cir. 2023) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). Combining these two definitions, this Court concludes that a CRA must include the child support information in its report and that, if any provisions of the subchapter clash, §1681s-1 controls. The question then becomes whether there is a clash between §1681s-1 and the provisions of the FCRA that Plaintiff brings claims under.

According to Defendant, the mandate from §1681s-1 that they must report information from child reporting agencies clashes with and supersedes the requirement in §1681(e) that Defendant ensure "reasonable procedures" and the requirement in §1681(i) that Defendant "reasonably reinvestigate" inaccurate information. Plaintiff argues that the above reading can still work in tandem with the other provisions of the FCRA to allow the claims to move forward. In the absence of binding Third Circuit precedent, both parties have cited to *Berry v. Experian Info. Sols., Inc.*, a case pending in the Eastern District of Michigan in which the plaintiff is represented by the same law firm as the plaintiff here, the defendant is identical and represented by the same law firm, and the underlying facts are nearly identical to those presently before this Court. *See*

*Berry v. Experian Info. Sols., Inc.*, No. 22-cv-11556 (E.D. Mich. 2022).  In *Berry*, the plaintiff claims that Experian reported an open child support account despite a court order abating the obligation to pay.  *Berry*, 2023 WL 6316006, at *1–2 (E.D. Mich. Sep. 28, 2023).  The district court in *Berry* granted a motion for judgment on the pleadings for claims under §§1681e(b) and 1681i on the grounds that "Experian was required by § 1681s-1 to report the information furnished by MCS regarding Berry's child support obligation."  *Berry*, 2023 WL 6316006, at *7 (E.D. Mich. Sep. 28, 2023).  The Sixth Circuit ultimately reversed and concluded that "the district court . . . erred in ending its analysis at this step."  *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024).  Rather, the Sixth Circuit continued with a traditional analysis under §§1681e(b) and 1681i notwithstanding that it found "Experian was required to report Berry's unpaid support balance."  *Id.*

This Court reads the *Berry* Sixth Circuit decision to essentially hold that there may be certain cases where the provisions of §§1681e(b) and 1681i do not clash with §1681s-1.  Such an approach is sensible, as this Court can certainly envision a hypothetical case where §1681s-1's impact is unclear and a reasonableness standard is a better litmus test for liability.  Therefore, while not binding, this Court adopts the Sixth Circuit's reasoning in *Berry* that, while CRAs are required to report information from child support agencies, they are not as a matter of law protected from claims under §§1681e(b) and 1681i for having done so.  Rather, it is necessary to proceed to a traditional analysis under §§1681e(b) and 1681i.

## B.  15 U.S.C. §§1681e(b) & 1681i.

Under the FCRA, a CRA must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. §1681e(b).  The elements for a claim of negligent noncompliance under §1681e(b) are: "(1)

inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).  Under §1681i, after a consumer notifies a CRA of a dispute, that CRA "shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and correct any inaccuracy within 30 days.  15 U.S.C. §1681i(a)(1)(A).  To succeed on a claim under §1681i(a), a plaintiff must establish: "(1) that the consumer disputed the accuracy of an item in his or her credit file; and (2) that a reasonable investigation by the agency could have uncovered the inaccuracy."  *Angino v. Trans Union, LLC*, No. 17-954, 2018 WL 6042901, at *3 (M.D. Pa. Nov. 19, 2018) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)), *aff'd*, 784 F. App'x 67 (3d Cir. 2019).

Each of Plaintiff's claims first require a showing that the reported information was inaccurate.  *See Angino*, 784 F. App'x at 69 (holding that plaintiffs "must show that their credit reports contain inaccurate information" to prevail on Section 1681e(b) and 1681i(a) claims).  A consumer report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (per curiam) (unreported) (internal citations omitted).  Defendant is not moving for summary judgment on the basis that the reported information was accurate, nor could it.  There are certainly inconsistencies and illogicalities that make it probable if not certain that there were, at times, inaccuracies in Plaintiff's credit reports. The pertinent inquiry is not whether the information was inaccurate, but whether the inaccuracies were due to Defendant failing to follow reasonable procedures under §1681e(b), and whether a

reasonable investigation would have uncovered the inaccuracies under §1681i(a). *See Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225, 1236 (W.D. Wis. 2005) ("A [defendant's] obligation under the [FCRA] is to employ reasonable procedures, not perfect ones."). On the record before it, this Court finds that Plaintiff has failed to put forth a genuine issue of material fact to show either that Defendant's procedures or reinvestigation were unreasonable. Defendant was required to report Plaintiff's information and did so accurately as it was received from the DCSE. When Plaintiff raised doubts numerous times as to the accuracy of the information that the DCSE was reporting, Defendant followed up with the DCSE each time to confirm that it was accurately reporting the information. As previously acknowledged, there certainly may have been inaccuracies in the DCSE's reporting of Plaintiff's information, but to hold Defendant liable on the facts in this case would essentially turn the FCRA into a strict liability statute.

The gravamen of Plaintiff's grievances ultimately lie not with Defendant's reporting, but with the original source of the information, the DCSE. Plaintiff argues that, because the DCSE is immune from claims under the FCRA, he will be left without recourse if his claims against Defendant fail. Congress has acted to immunize state agencies under the FCRA, and the lack of an adequate defendant is not a consideration for this Court when it comes to determining Defendant's liability. Plaintiff also argues that Defendant acted unreasonably by not investigating seven additional inquiries, which Defendant's mail-sorting protocol determined came from other individuals and not Plaintiff. This Court is unpersuaded by this argument. While Defendant's mail-sorting protocol might be found unreasonable for some hypothetical case, it was not unreasonable as it relates to Plaintiff's case and claims. Plaintiff has not put forth any evidence which would plausibly suggest that these additional inquiries would have changed anything about the DCSE's reporting.

Having decided that Defendant is entitled to summary judgment on the basis of its reasonable procedures and investigations, this Court declines to address the parties' arguments with respect to damages.

**V.** **CONCLUSION**

For the reasons set forth above, Defendant's MSJ is **GRANTED**.  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Stacey D. Adams, U.S.M.J.
          Parties

## CERTIFICATE OF SERVICE

I certify that on April 29, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. Counsel for Defendant-Appellee are registered CM/ECF users and will be served by the CM/ECF system.

Dated: April 29, 2025,

*/s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM**

*Attorneys for Plaintiff-Appellant Echol Watkins*

1